**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**ANTONIO LAMONT SMITH**                                                                **PETITIONER**

VS.                               **CASE NO.: 5:15CV00173 BD**

**WENDY KELLEY, Director,
Arkansas Department of Correction**                                              **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

### I.     Underlying Facts

A Pulaski County, Arkansas, jury found petitioner Antonio Lamont Smith guilty of first-degree murder and possession of firearms by certain persons.  He was sentenced to an aggregate term of 65 years' imprisonment in the Arkansas Department of Correction ("ADC").  (Respondent's Exhibit A at pp. 53-55)  *Smith v. State*, 2012 Ark. App. 359, 1.  On direct appeal, Mr. Smith argued there was insufficient evidence to support his first-degree murder conviction, because the State did not prove that he "purposely" killed the victim, Cizano Jones.  *Id*.   The Arkansas Court of Appeals affirmed the conviction.

The Court of Appeals summarized the evidence presented at trial as follows:

Here, testimony from the trial established that on the day of the shooting, March 12, 2010, appellant was with Kisma Gary and Cizano Jones (who by all accounts was a dear friend of appellant's) and that they drank alcohol and smoked marijuana during the day.  Around 8:00 p.m., Gary testified that she, appellant, Jones, and Clarence Hayes drove to Little Rock in Hayes's car to buy some "sherm"[1]; that they then went to Clarence

---

[1]Dr. Adam Craig of the Arkansas State Crime Lab testified that "sherm" is "marijuana with some PCP in it."  (Respondent's Ex. A at p. 362)

1

> Hayes's house, smoking the first sherm "cigarette" in the car on the way; and that the second "sherm stick" was smoked at Hayes's house by appellant and Jones. Gary described appellant's conduct after arriving at Hayes's house as "wigging out." She said that he was hollering, screaming, and taking his clothes off. She said that he said something about wanting sex and that he pulled a gun out, pointed it straight at her, and yelled, "I need some p——y!" She said that she walked over to him to try to get the gun away, and he pointed it at her chest. She described how she unlocked the door, opened it, and ran. She stated that she ran to her grandmother's house and called the victim, Jones. She said that Jones reported that everything had calmed down and asked her to come back. She said that very soon after she hung up, appellant and Hayes pulled up to her grandmother's house, and she did not see Jones with them. She said that appellant just stood there; that her grandmother arrived and asked him what was wrong; that appellant said to Hayes, "Let's go"; and that Hayes said something about "that man around there in a puddle of blood." Gary stated she knew at that point that appellant had shot Jones. She also testified that appellant used to ask her why she needed Jones, was he her "body guard or something?" She expressed her belief that appellant wanted to be alone with her, to have a romantic relationship.

*Id*. at 2-3.

Forensic evidence introduced at trial showed that Jones was hit with three bullets; the bullets were fired downward; and the fatal wound was a gunshot to his forehead. *Id*. at 3. A neighbor testified that on the night of the shooting, he was eating dinner with his wife when he heard a gunshot, then heard another about thirty-five to forty seconds later. (Ex. A at pp. 257-63) *Id*. at 3-4. A former cell-mate of Mr. Smith's, Leroy Vance, testified that appellant essentially "tried out" several versions of events in an effort to come up with a version that would be less incriminating, and, at one point, offered a scenario where Clarence Hayes pushed Cizano Jones in front of the gunfire. (*Id*. at pp. 377-93) *Id*. at 4.

Mr. Smith testified at trial and admitted emptying his gun. (*Id*. at 405) *Id*. He stated, "All I know I just aimed it, called myself trying to just crack a joke, you know, what I'm saying. I just aimed it, called myself trying to scare them, and when he jumped up, he ran towards Clarence, and he pushed him backwards." (*Id*. at 406) *Id*. On cross-examination Mr. Smith testified, "I just went to shooting. . . . I didn't think nobody was going to get hurt." (*Id*. at 417) *Id*. Mr. Smith denied pointing his gun at Mr. Jones. (*Id*. at 418) *Id*. The Court of Appeals held that there was substantial evidence to support the verdict. *Id*. at 5.

## II.    Post-Trial Proceedings

### A.    Rule 37 Petition

#### 1.    Proceeding Before The Trial Court

Mr. Smith brought a timely petition for post-conviction relief in the trial court under Arkansas Rule of Criminal Procedure 37.1. In his petition, Mr. Smith claimed his trial counsel, Stuart Vess, was ineffective: (1) by failing to call Clarence Hayes who could have testified that the shooting was an accident; (2) by failing to investigate the shooting and prepare a defense that the shooting was accidental; (3) by raising his character defects, stating that his educational level was eighth or ninth grade, and making a hand gesture circling his head suggesting that he was stupid or crazy; (4) by not properly objecting to a video tape of him made after the shooting and failing to argue that his demeanor in the video tape reflected that the shooting was accidental; (5) by calling

Mildred Johnson to testify about an incident that had happened seven years before the shooting concerning appellant's drug use because the testimony prejudiced the defense; and (6) by failing to raise the fact, and failing to call a witness to support, that the victim had been pushed in front of the gun. (Respondent's Ex. D at pp. 21-28) *Smith v. State*, 2014 Ark. 323, 5 (2014).

In an amended petition, Mr. Smith cited portions of the trial transcript that he contended contained examples of counsel's actions prejudicing him – including remarks made by his counsel during opening statement agreeing with the State's version of the facts, which were not supported by evidence. (*Id*. at pp. 45-48) He further contended that counsel prejudiced the defense by bringing up his drug use; by failing to present mitigating evidence at sentencing; by failing to retain an investigator to interview witnesses; by not bringing out conflicts in statements to police; and by failing to question Leroy Vance about a statement he had made to the police that was consistent with Hayes's statement that he had taken the gun from appellant at some point. *Smith v. State*, 2014 Ark. 323, 5 (2014). The trial court denied the motion after holding a hearing at which Mr. Smith's trial lawyer testified. (*Id*. at pp. 55-56, 61-70)

      2.      Proceedings on Appeal

Mr. Smith appealed the trial court's denial of his Rule 37.1 petition. (Respondent's Ex. E.1) He argued that the trial court failed to comply with Rule 37.3, which requires the court to hold an evidentiary hearing and to make written findings. The

Court, however, rejected those arguments, because the trial court had held an evidentiary hearing and had issued written findings of fact and conclusions of law. *Smith* 2014 Ark. 323 at 6.

The Court found that the majority of Mr. Smith's allegations of ineffective-assistance-of-counsel centered around his claim that his lawyer employed an improvident trial strategy. *Id*. at 7. These included Mr. Smith's claims that counsel prejudiced the jury by pointing out his lack of education; by suggesting with hand gestures that Mr. Smith was stupid or crazy; by not establishing that a video of him made after the shooting showed him in a state of shock rather than merely high on drugs; and by questioning witnesses about his current and past drug use. *Id*. The Court surmised that Mr. Smith's complaint in each of these claims was that counsel was wrong to focus on his mental condition as affected by drug use and other factors as an explanation for the shooting rather than pursuing a defense that the shooting was accidental. *Id*.

Mr. Vess testified at the hearing that his approach to the trial revolved around the facts that the victim had been shot three times in a small room and that appellant admitted having pulled the trigger. *Id*. Mr. Vess testified that, at trial, he wanted to demonstrate that everyone involved, including the victim, was high on drugs so that the jury would conclude that Mr. Smith should be given a lenient sentence. (Respondent's Ex. D at p. 66) *Id*. Counsel explained that he did not call Clarence Hayes as a witness because Mr. Hayes had told him that he would testify that Mr. Smith shot the victim on purpose, from

5

between one-to-two feet away; that Mr. Smith had pointed the gun at him; and that he hid in the room for fear that Mr. Smith was going to shoot him. (*Id*. at pp. 67-68) *Id*. at 7-8.

The Arkansas Supreme Court noted that, in his opening statement, defense counsel stated that Mr. Smith and the victim were good friends and that, through testimony, he established that everyone in the room was impaired by drug use, and that the shots were fired around the room rather than at the victim. *Id*. at 8. Counsel questioned Mr. Smith at trial as to whether he intended to shoot the victim and also questioned him, as well as other witnesses, about his lengthy friendship with the victim and his lack of a propensity for violence. *Id*. Counsel argued that Mr. Smith did not commit murder in the first degree and succeeded in having the jury instructed on lesser-included offenses. *Id*. The Court found counsel's decision to base the defense on Mr. Smith's altered state of mind was trial strategy, and held that the strategy was not outside the bounds of reasonable professional judgment, given the evidence adduced at trial. *Id*.

The Court also addressed Mr. Smith's assertion in his amended Rule 37.1 petition that counsel was ineffective for not questioning his former cell-mate, Leroy Vance, about a statement he had made to police concerning Mr. Hayes having taken the gun from him at some point. The Court held that the claim did not "satisfy the *Strickland* standard for establishing that counsel was ineffective because it does not demonstrate that there is a reasonable probability that, but for counsel's failure to question Vance about his

statement, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the error." *Id*. at 9.

The Court found that Mr. Smith had raised new claims on appeal, including claims that Mr. Vance illegally seized his private papers; a claim the State failed to disclose the video tape before trial; and a claim that counsel should have moved to sever the felon-in-possession-of-a-firearm charge. *Id*. The Court refused to consider these clams because Mr. Smith raised them for the first time on appeal. *Id*. at 9-10 (citing *Dixon v. State*, 2014 Ark. 97, 2014 WL 805350 (per curiam); *Green v. State*, 2013 Ark. 455, 2013 WL 5968933 (per curiam); *Williams v. State*, 2013 Ark. 375, 2013 WL 5524467 (per curiam)).

The Court held Mr. Smith's claims were not supported by facts sufficient to overcome the presumption that counsel's conduct was within the wide range of reasonable, acceptable professional assistance and that he had not met his burden of demonstrating that counsel made specific errors that prejudiced the defense. *Id*. at 10.

## III.    Petition for Writ of Habeas Corpus

In this petition, Mr. Hogan first claims the trial court violated his due process rights when it did not appoint counsel to represent him in the Rule 37 proceedings. (#2 at p. 5, #3 at pp. 6-8)   Additionally, he claims that his counsel was constitutionally ineffective:

(1) by failing to raise issues on direct appeal (#2 at p. 5, #3 at pp. 7, 9);

7

(2) by failing to investigate and prepare to impeach Leroy Vance (#2 at p. 6, #3 at pp. 8-9);

(3) for suggesting that he was crazy or stupid by making gestures with his hands circling his head and by failing to call teachers, counselors, or case workers to the stand in an effort to mitigate his sentence (#2 at p. 8, #3 at pp. 9-10);

(4) by failing to call Clarence Hayes to give testimony supporting his theory that the shooting was accidental (#2 at p. 10, #3 at pp. 10-11);

(5) by failing to move to sever the possession-of-a-firearm-by- certain-persons charge from the murder charge and by failing to challenge the admission of a convenience-store video which showed his demeanor immediately after the shooting (#2 at p. 11, #3 at pp. 11-12); and

(6) for referring to his prior felony convictions in front of the jury (#2 at p. 13, #3 at p. 13)

Director Kelley responds that Mr. Smith has inexcusably procedurally defaulted his claims that counsel was ineffective for failing to call teachers, counselors, or case workers to mitigate his sentence, for failing to move to sever the felon-in-possession charge, and for failing to object to the admission of the videotape. This is probably true; however, in the interest of judicial economy, the Court will address the merits of all of Mr. Smith's claims. See *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc) (in the interest of judicial economy, a court may address the merits of a petition, despite likely procedural default).

**IV. Discussion**

    A.    Standard of Review

A federal court can grant a writ of habeas corpus to a state prisoner only where a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(d)). Relief will be granted only if the state court decision is both incorrect and unreasonable. *Id*. (quoting *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010)). The Court must presume the state court's factual findings are correct, and it is Mr. Smith's burden to rebut this presumption by clear and convincing evidence. *Id*. (citations omitted).

    B.    Trial Court's failure to Appoint Counsel

Mr. Smith claims the trial court violated his due process rights by failing to appoint counsel to represent him during the Rule 37 proceedings and by failing to follow the requirements of Arkansas Rule of Criminal Procedure 37.3 by making written findings of fact and conclusions of law. Both claims fail.

It is established law that there is no constitutional right to an attorney in state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991). Here, the trial court exercised its discretion under

9

Arkansas Rule of Criminal Procedure 37.3(b) and opted not to appoint counsel to represent Mr. Smith at the hearing.

Before the hearing began, the State asked the court to deny the petition without taking testimony on the grounds that Mr. Smith had not established error or prejudice in order for the court to grant the requested relief. The court denied the request and proceeded to take testimony from Mr. Smith's trial counsel. Mr. Smith was given a full opportunity to question Mr. Vess regarding his complaints. After hearing the testimony, the court orally denied the petition and stated it was "obvious" that he should have done it before taking testimony. Because Mr. Smith did not have a constitutional right to counsel and had no factual support for his claims of ineffective assistance of counsel, his constitutional rights were not violated by the trial court's failure to appoint counsel.

Mr. Smith also complains that the trial court did not follow the procedures set forth in Rule 37 by making written findings of facts and conclusions of law.[2] As the Arkansas Supreme Court observed, the claims in Mr. Smith's petition were largely conclusory, and, under Arkansas law, it could affirm the denial of a Rule 37.1 petition, regardless of the adequacy of the order, if it could determine from the record that the petition was wholly without merit or if it determined, from the face of the petition, that the allegations were so

---

[2]Mr. Smith's allegation that the trial court did not make written findings of fact and conclusion of law when denying his Rule 37 petition is factually incorrect. Here, the trial court entered a written order denying the requested relief that included both findings of fact and conclusions of law. (Respondent's Ex. D at p. 55)

conclusory that no relief was warranted. *Smith v. State*, 2014 Ark. 323, at 6-7 (citations omitted).

Federal habeas courts are not the arbitrators of state law or state procedure. *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997). The question of whether the written findings of a state trial court judge comply with a state procedural rule does not implicate federal law or the United States Constitution. In other words, Mr. Smith's claim is a challenge to state procedure, not to his state custody. So, to the extent Mr. Smith challenges the adequacy of the trial court's written order denying relief on his Rule 37 petition, the claim falls outside the realm of federal habeas review. 28 U.S.C. § 2254(a) (federal district court can entertain a habeas corpus petition only if the petitioner is in state custody in violation of the United States Constitution or federal laws).

    C.    Ineffective Assistance of Counsel

A criminal defendant's sixth amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

In order to prevail on his habeas corpus claim based on ineffective assistance of counsel, Mr. Smith must show: (1) that his trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a

reasonably competent attorney; and (2) that there is a reasonable probability that the outcome would have been different but for the substandard performance of trial counsel. *Strickland*, 466 U.S. at 687–94. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Wiggins v. Smith*, 539 U.S. at 534 (quoting *Strickland*, 466 U.S. at 694). The Court's scrutiny of counsel's performance is highly deferential, and the Court applies a strong presumption that counsel's conduct falls within the "wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689); see also *Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006)).

"Failure to establish either Strickland prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citation omitted). The Court is not required to address the performance prong if the petitioner cannot affirmatively prove prejudice. *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013)(citation omitted).

    1.    *Counsel's performance on direct appeal*

Mr. Smith claims his counsel was ineffective on direct appeal. He alleges that his trial counsel, who also represented him on appeal, was ineffective for not developing the record, and as a result, he suffered prejudice. (#3 at p. 7) Mr. Smith has not provided any support for his claim that his counsel's performance fell below that of reasonably competent attorney on direct appeal.

On direct appeal, Mr. Vess argued that there was insufficient evidence to support Mr. Smith's first-degree murder conviction. (Respondent's B.1) *Smith v. State*, 2012 Ark. App. 359, 1. Mr. Smith does not allege there were other errors with respect to his trial that counsel could have raised on appeal. Moreover, he does not offer any evidence to support his claim that the outcome of the appeal would have been different had counsel made different or additional arguments. Accordingly, Mr. Smith has not met the *Strickland* standard with respect to this claim.

2. *Counsel's trial strategy*

Mr. Smith complains that his trial counsel was ineffective for suggesting that he was "crazy or stupid" and by making "gestures with his hands circling around his head" in front of the jury. He also argues counsel was ineffective for failing to call Clarence Hayes to give testimony supporting his theory that the shooting was accidental, and for failing to object to the introduction of a convenience-store video which showed his demeanor immediately after the shooting. Mr. Smith raised a version of each of these claims with the state courts, and, as the Arkansas Supreme Court points out, in all three claims Mr. Smith is challenging his counsel's trial strategy. Essentially, Mr. Smith urges that his counsel should have approached his defense with the strategy that the shooting was accidental, and, consequently, testimony regarding his competence or drug use, or demeanor would not have been relevant or necessary.

In addressing Mr. Smith's claims, the Arkansas Supreme Court noted that, under Arkansas law, "counsel is allowed great leeway in making strategic and tactical decisions," and "matters of trial strategy, even if the strategy proves improvident, are not grounds for granting postconviction relief. *Smith*, 2014 Ark. 8 (citing *Leak v. State*, 2011 Ark. 353, 2011 WL 4092217 (per curiam); *Prater v. State*, Ark. 164, 402 S.W.3d 68; *Fretwell v. State*, 292 Ark. 96, 728 S.W.2d 180 (1987) (per curiam)). The state court's decision is not contrary to, or an unreasonable application of, clearly established federal law, because federal law also gives great deference to counsel's strategic decisions. See *Middleton v. Roper*, 455 F.3d 838, 848-49 (8th Cir. 2006)(the Court gives "great deference to counsel's informed strategic decisions," and it "'must resist the temptation to second-guess a lawyer's trial strategy'") (quoting *Laws v. Armontrout*, 863 F.2d 1377, 1393 (8th Cir.1988) (en banc) (citation omitted)).

Additionally, the Arkansas Supreme Court's rejection of Mr. Smith's claims was not based on an unreasonable determination of the facts. At the Rule 37 hearing, Mr. Vess testified that, "the Defendant was alleged to have shot the victim three times, once in the head, in a small room, and, part of my tactics were to discuss the fact that they were all high on drugs and had been using drugs that day in hope to get more, a more lenient sentence even though I knew that wasn't a defense. I just was hoping to get, get [sic] enough that the jury might think that he was deserving of a lighter sentence." (Respondent's Exhibit D at p. 66)

Further, Mr. Vess testified that he had discussed the issue of Mr. Hayes's testimony with Mr. Smith. Mr. Vess recounted that when he interviewed Mr. Hayes, Mr. Hayes told him that he would testify that Mr. Smith "shot the victim from between one and two feet away and that he did it purposefully." (*Id.* at p. 67) Additionally, Mr. Vess testified that when he asked Mr. Hayes where he was at that time of the shooting, he stated that, "he was hiding . . . by the door of the room because he was afraid that Antonio was going to shoot him" because he had been "pointing the gun at him before he shot the victim." (*Id.*)

Under the circumstances, the Arkansas Supreme Court did not err in finding that counsel's trial strategy did not fall below the objective standard of skill and diligence displayed by a reasonably competent attorney. Accordingly, the claim fails.

    3.    *Failure to adequately impeach Leroy Vance*

Mr. Smith complains that his counsel was ineffective for failing to properly investigate the case so that he could impeach Leroy Vance at trial. Mr. Vance, a former cell-mate of Mr. Smith's, testified that Mr. Smith "tried out" several versions of events on him in an effort to come up with a version that would be less incriminating, and, at one point, offered a scenario where Clarence Hayes pushed Cizano Jones in front of the gunfire. Mr. Smith argues that Mr. Vess should have established that one of the stories Mr. Vance related to police – that Clarence Hayes took the gun from Mr. Smith – is similar to a statement Mr. Hayes made to police about pulling the gun out of Mr. Smith's

15

hand. *Smith*, 2014 Ark. 323, at 9. (Respondent's Ex. D at p. 47) In his appeal of the denial of his Rule 37 petition, Mr. Smith argued that had the jury known about Mr. Hayes's statement to police, Mr. Vance's credibility would have been damaged and the outcome of the trial might have been different. (*Id*.)

The Arkansas Supreme Court addressed Mr. Smith's argument and held that Mr. Smith had not established that his counsel's failure to cross-examine Mr. Vance on this particular point prejudiced his defense. *Id*. The Court noted that there was not a reasonable probability the outcome of the trial would have been different had the jury known that Hayes and Vance related the similar detail to police, because the detail was inconsequential to the core facts established by the State to meet its burden of proving first-degree murder. *Id*. The Arkansas Supreme Court's rejection of the claim was not an unreasonable application of *Strickland*.

    4.    *Failure to call witnesses during the sentencing phase*

As part of his third claim, Mr. Smith complains that his trial counsel was ineffective for failing to call teachers, counselors, or case workers to testify during the penalty phase in an effort to mitigate his sentence. In his petition, Mr. Smith has neither identified teachers, counselors, or case workers that counsel should have called to testify during the penalty phase of his trial; nor has he set forth the substance of the testimony that these unidentified people would have offered at trial. Further, Mr. Smith has not produced any evidence to support his claim that he was prejudiced by his counsel's failure

to call additional witnesses. See *Kennedy v. Kemna*, 666 F.3d 472, 479 (8th Cir. 2012)(mere speculation does not satisfy Strickland's prejudice standard)(citing *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989)). Under the circumstances, the Court must reject Mr. Smith's claim that his counsel was constitutionally ineffective for failing to call additional witnesses during the penalty phase of his trial.

     5.     *Failure to move to sever*

Mr. Smith claims his counsel was ineffective for failing to move to sever the felon-in-possession-of-a-firearm charge from the first-degree murder charge. Mr. Smith's claim is not supported by the record.

At plea-and-arraignment and a detention hearing, Mr. Smith was represented by appointed counsel. At the detention hearing, his appointed public defender moved to sever the trial on the firearm-possession charge from the trial on the first-degree murder charge. (Respondent's Ex. A at p. 84) The judge granted the motion and set two trial dates. (*Id*. at p. 86) But on the day of the trial on the first degree murder charge, Mr. Vess informed the court that his client wanted to waive his right to a separate trial on the firearm-possession charge and try all of the counts together. (*Id*. at 133) After being informed of the change, the Court raised the issue with Mr. Smith prior to trial:

    BY THE COURT:

        Mr. Smith, you understand you can have that severed and try it a different time. But, it's my understanding you want to, it's my understanding you want to try that today.

BY THE DEFENDANT, MR. ANTONIO SMITH:

>Yes, sir.

BY THE COURT:

>And, you talked this over with Mr. Vess.

BY THE DEFENDANT, MR. ANTONIO SMITH:

>Yes, sir.

BY THE COURT:

>And, he explained to you that you have a right to have it severed and try it another day.

BY THE DEFENDANT, MR. ANTONIO SMITH:

>Yes, sir.

BY THE COURT:

>And, you decided you want to try it anyway and get it over with.

BY THE DEFENDANT, MR. SMITH:

>Yes, sir.

(*Id*. at pp. 135-36)  Because Mr. Smith waived his right in open court to have the firearm-possession charge severed, his counsel's reference to Mr. Smith's prior felony convictions did not fall below the objective standard of skill displayed by a reasonably competent attorney.

6.  *Failure to object to the admission of the videotape*

As part of his fifth claim, Mr. Smith alleges that his counsel was ineffective for failing to object to the admission of a convenience-store video that showed his demeanor immediately after the shooting. Mr. Smith does not explain, however, a basis for excluding the video. Before the trial started, Mr. Vess objected to the prosecutor's use of the video because he had not had an opportunity to view it. (*Id*. at 239) The Court overruled the objection and gave Mr. Vess the opportunity to view the video before opening statements. (*Id*. 241-42)

During the trial, the prosecutor laid an adequate foundation for the admission of the video through testimony of the convenience store security guard who retrieved and reviewed the video. (*Id*. at pp. 306-09) Mr. Smith has not come forward with a basis for excluding the video. Furthermore, he has not establish that he was prejudiced by the admission of the video. Accordingly, his claim that counsel was ineffective for failing to object to the video fails.

## V.  Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Smith has made a substantial showing that he was denied a constitutional right. 28

U.S.C. § 2253(c)(1)-(2).  After considering Mr. Smith's petition, the Court finds no basis to issue a certificate of appealability.

## VI. Conclusion

Mr. Smith's claims for habeas relief lack merit.  Accordingly, his petition for writ of habeas corpus (#2) is DENIED and DISMISSED, with prejudice.  There is no basis for this Court to issue a certificate of appealability.  Accordingly, a certificate of appealability is DENIED.

DATED this 9th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE